Wright<br>*v.*<br>Barrett.

## BENJAMIN BARRETT *et ux. et al. versus* THEODORE WRIGHT.

A testator owning stock in a bank, which by its charter was to expire within a few years, bequeaths the stock to his two daughters, one of whom was a widow, the other a feme covert, but directs that it shall stand in the name of his executor until the expiration of the charter, the executor paying to the daughters the dividends on the stock. The charter was renewed. It was *held*, that when the time arrived which had been fixed for the expiration of the original charter, the daughters were entitled to have the stock transferred to them.

Parol declarations of the testator, showing that he expected that the charter would be renewed, were held to be inadmissible in evidence to affect the construction of the will.

BILL *in equity*, brought by Benjamin Barrett and Mary Barrett his wife, and Sarah Adams. Mary Barrett and Sarah Adams were daughters of Seth Wright, deceased, testate.

The bill alleges that the Hampshire bank, in Northampton, was incorporated by an act of the legislature passed in 1813, and that by the provisions of that act the charter was to expire, and did expire, on October 1, 1831 ; that Seth Wright, at the time of making his will, and until his decease,

owned stock in the Hampshire bank to a greater amount than $14,000, and stock in the city bank, in Boston, to a greater amount than $2,000 ; that his will, made in March 1826, contained the following bequest — " 1. I give and bequeath to my daughter Sarah Adams 7000 dollars in stock of the Hampshire bank, and 1000 dollars in stock in the city bank, in Boston, at the par nominal value thereof," — and a bequest, in similar terms, to the testator's daughter Mary, then un married ; that the testator gave the greater part of his estate, real and personal, to his son, the defendant, and appointed him executor of the will ; that about the 1st of August, 1826, Benjamin Barrett intermarried with the testator's daughter Mary, and that on the 2d of November ensuing the testator made a codicil, directing that the sum of 1600 dollars should be deducted from the bequest made in his will to his daughter Mary, and further directing " that the bank stock given my daughters Sarah and Mary shall stand in the name of my son Theodore until the expiration of the charter of the Hampshire bank, he my said son Theodore faithfully and punctually paying to his said sisters all dividends on such stock after my decease ;" that the testator died in January, 1829, and that the defendant proved the will and took upon himself the trust of executor ; that after this the bank stock bequeathed as above mentioned, was transferred to, and has ever since stood in the name of the defendant ; and that after the 1st of October, 1831, the plaintiffs severally applied to the defendant to assign the bank stock to them, which he refused to do. The bill prays that the defendant may be compelled to assign the bank stock to the plaintiffs respectively, and in the proportions to which they are severally entitled.

The defendant, in his answer, alleges that the charter of the Hampshire bank did not necessarily expire on the 1st of October, 1831, and that by an act passed on February 28, 1831, it was extended to October 1, 1851, and that in all respects the business of the bank has been transacted since October 1, 1831, as it was before that time ; that the testator intended that the stock should stand in the name of the defendant so long as the bank should continue its operations as a banking company, as well in case of an extension of its

charter, as while acting under the sole authority of the act of 1813 ; that the testator, in conversations by him had with the defendant, as well as with other persons, both before and after the making of the codicil, and with reference thereto, declared his expectation and belief that the charter of the bank would be extended ; and that the defendant refused to transfer the stock to the plaintiffs, as by law and a faithful discharge of the trust reposed in him by the testator, he felt himself bound to do.

*Forbes*, for the plaintiffs, said that the conversations referred to in the defendant's answer, were not admissible in evidence to affect the construction of the will ; *Farrar* v. *Ayres*, 5 Pick. 404 ; 3 Stark. Ev. 1010 ; *Foster* v. *Wood*, 16 Mass. R. 116 ; *Richards* v. *Dutch*, 8 Mass. R. 506 ; *Hall* v. *Leonard*, 1 Pick. 31 ; and that the testator, when he made his will and codicil, had regard to the expiration of the then existing charter of the bank ; (see, for rules of construing wills, *Richardson* v. *Noyes*, 2 Mass. R. 56 ; Doug. 494, note 1 ; *Bagshaw* v *Spencer*, 1 Ves. sen. 153 ; *Jackson* v. *Billinger*, 18 Johns. R. 381 ; Bac. Abr. *Legacies*, B 3 ; *Poole* v. *Poole*, 3 Bos. & Pul. 627 ;) that this was a question as to the intention of the testator, but that even in point of law, the bank did not continue to act after October 1, 1831, by virtue of the original charter. St. 1828, c. 96, § 30, 31 ; St. 1830, c. 58, § 1.

*Bates* and *Dewey*, for the defendant, cited as to the admissibility of the testator's conversations, *Sargent* v. *Towne*, 10 Mass. R. 307 ; and they contended that the statutes of 1828 and 1830, above cited, had the effect to remove the limitation affixed to the charter of the bank, so that it did not expire in 1831.

SHAW C. J. delivered the opinion of the Court. The only question for the Court, in the present case, is, what the testator intended by the clause in his will, which has been the subject of comment. By the terms of the will, the legacy of bank stock to the daughters severally, was specific, and would have vested in them immediately. But by the provision in the codicil, the testator directed that the same bank stock should stand in the name of his

*Barrett v. Wright.*

*Sept. 21th*

*Sept. 29th*

son Theodore, the defendant, until the expiration of the charter of the Hampshire bank, he paying to his sisters all dividends on such stock after the testator's decease. This in effect changed the bequest from a direct gift to his daughters, to a gift of the legal interest in the stock to his son, upon trust to pay over to them the income for a certain time, periodically, and then to transfer to them the principal. The question is, what period of time was thus intended. All the material facts alleged in the bill are admitted by the answer ; the defendant admits that he has not transferred the stock, and feeling that he was bound to execute the trust reposed in him by his father, and believing that by the terms of the will, and in order to the execution of the trust, he was bound still to retain the stock in his own name, and on no other ground, he has refused to make the transfer.

We think the evidence offered in the answer, that is, proof by parol evidence, what the testator said and expected in regard to the renewal of the bank charter, is inadmissible. It would be to give an effect to clauses of a will, by parol evidence, different from that which the natural force and construction of the language would warrant, and so would tend to give effect to a parol will, contrary to the plain intent of the statute, requiring a will to be in writing, and when (as the present) it is a will of lands, as well as personalty, to be attested by three witnesses.

We do not think it necessary to consider how far a corporation has an intrinsic capacity to accept an act of the legislature, extending the terms of its duration, and whether, if so extended, it is legally or metaphysically the same or another corporation, or whether the act of renewal is an act creating a corporation, or only one protracting and continuing one already existing. The sole question is, what did the testator understand, and how did he mean to be understood, in the language thus used.

By the law as it then stood, the charter of the Hampshire bank would expire in October 1831. It is obvious too, that the transfer of stock in the City bank, was to depend upon the same event, that is, the expiration of the

charter of the Hampshire bank, though the charter of the City bank, of which the testator was an original stockholder, was to expire at the same time. Had he intended to make it depend upon the contingency of a renewal in fact, as one might be renewed and the other not, it seems highly probable that he would have provided for that contingency. But if he intended that the trust should determine at the time fixed by law for the expiration of the charter, then, as both were to expire at the same time, it was unnecessary to name both.

But the other, and perhaps the most important consideration, is this; it is manifest from the will and codicil taken together, that it was the intention of the testator, that the daughters should have the stock, after a limited time; but if he looked not to the time then limited by law for the expiration of the bank charter, but to such time as it might be extended to, by a new legislative act, it would be wholly indefinite. If it were to extend to a period subsequently to be fixed by a new act of the legislature, the same rule of construction would extend it from time to time, as long as the bank might be renewed by any successive acts. Considering that, as well from the general scope, as the particular provisions of the will, this was not the intent of the testator, we are of opinion, that the duration of this trust was intended to be coëxtensive with the duration of the bank charter as then fixed and limited by law, and that from and after that time it was the duty of the defendant, under this trust, to transfer the stock to his sisters.